IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BILLY L. SPEARS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:15-CV-511-RP |
| | § | |
| STEVEN McCRAW, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment, (Dkt. 31). Having reviewed the filings, the relevant law, and the factual record, the Court issues the following order.

## I. BACKGROUND

This action is a suit by Plaintiff Billy L. Spears ("Plaintiff" or "Spears") against the Texas Department of Public Safety ("TDPS"), Steven McCraw, David Baker, Luis Gonzalez, Rhonda Fleming, Michael Bradberry, Luis Sanchez, K.B. Wilkie, Brandon Negri, Jimmy Jackson, and Marcus Stokke (collectively, "Defendants").[1] Plaintiff originally filed suit in the 98th District Court of Travis County, Texas, but Defendants removed the action to federal court pursuant to 28 U.S.C. § 1331.

Plaintiff is a trooper with the TDPS Highway Patrol Division. (Original Pet., Dkt. 1-3, ¶ 2). On May 10, 2014, Plaintiff and Trooper Manuel Ponce attended a concert at Lake Fork, Texas in plain clothes and while off-duty. (*Id.* ¶ 14). Both men attempted to carry alcoholic drinks from one area of the concert to another, but were stopped by a security guard. (*Id.*). According to Plaintiff, Defendant Stokke then approached the men and informed them that they could be arrested for a

---
[1] All defendants are employees of the state of Texas. Defendant McCraw is the director of TDPS, Defendant Baker is the deputy director of TDPS, Defendant Gonzalez is the assistant director of TDPS and the chief of the Highway Patrol Division, Defendant Fleming is the inspector general of TDPS, Defendant Michael Bradberry is a major in the Highway Patrol Division, Defendant Sanchez is a captain in TDPS's Office of Inspector General, Defendant Wilkie is a captain in the Highway Patrol Division, Defendant Negri is a lieutenant in TDPS's Office of Inspector General, Defendant Jackson is a lieutenant in the Highway Patrol Division, and Defendant Stokke is a sergeant with the Texas Alcoholic Beverage Commission. (Original Pet., Dkt. 1-3, ¶¶ 3–13).

1

Class A misdemeanor if they carried the alcohol beyond a certain point. (*Id.*). After some discussion, Defendant Stokke allegedly advised Plaintiff that his behavior could lead to an arrest for public intoxication. (*Id.*). Plaintiff and Trooper Ponce then identified themselves as fellow law enforcement officers. (*Id.*). Defendant Stokke detained Plaintiff and summoned other law enforcement officers. (*Id.*). Plaintiff was eventually released. (*Id.*).

Plaintiff subsequently filed a complaint with the Texas Alcoholic Beverage Commission, Defendant Stokke's employer, and reported the matter to the Texas Rangers and his superiors at TDPS. (*Id.* ¶ 15). He alleges that these actions led his superiors to retaliate against him in the form of a disciplinary complaint. (*Id.*). He was eventually suspended for one day without pay, but appealed that decision to TDPS Director Defendant McCraw. (*Id.* ¶ 20; Mot. Summ. J., Dkt. 31, at 5). Defendant McCraw concluded that the allegations against Plaintiff should not have been sustained, but ordered that Plaintiff receive "performance counseling." (Original Pet., Dkt. 1-3, ¶ 15). Shortly thereafter, Plaintiff received a "Counseling Record" stating that his actions at the concert were "unprofessional" and "reflected poorly on the Department." (*Id.*). Plaintiff signed the document, but wrote on it: "I don't agree with this." (*Id.*).

Several weeks later, Plaintiff worked an off-duty job as backstage security at a concert in Austin. (*Id.* ¶ 21). While Plaintiff was working backstage, he took a photograph with musician Calvin Broaddus. Broaddus performs under the stage name Snoop Dogg, and the photograph was later posted to Instagram with the caption "Me n my deputy dogg." (*Id.*). Plaintiff was subsequently served with another "Counseling Record," which stated: "While working a secondary employment job, Trooper Spears took a photo with a public figure who has a well-known criminal background including numerous drug charges. The public figure posted the photo on social media and it reflects poorly on the Agency." (*Id.* ¶¶ 22–24).

Several days later, Plaintiff's attorney sent a letter to Defendant McCraw "asking him to remove the 'Counseling Record' forms from [Plaintiff's] file and put a stop to the retaliation against [Plaintiff]." (*Id.* ¶ 25). The attorney then posted the letter on his blog, prompting local, national, and international media coverage. (*Id.*). TDPS issued a press release in response. (*Id.* ¶ 26).

Plaintiff, who was subsequently promoted to Senior Trooper, now seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"). He alleges that Defendants Jackson, Negri, Wilkie, Sanchez, Bradberry, Fleming, Gonzalez, Baker, and McCraw "retaliated against him for exercising his right to petition for redress of grievances as guaranteed by the First Amendment to the U.S. Constitution," denied him the equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution, and "denied him due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution." (Original Pet., Dkt. 1-3, ¶¶ 28–30). Plaintiff also alleges that Defendant Stokke "violat[ed] his right to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the U.S. Constitution," (*id.* ¶ 31), and asserts a supplemental claim under the Texas Whistleblower Act, (*id.* ¶ 33).

Defendants filed the instant Motion for Summary Judgment on May 30, 2017. (Mot. Summ. J., Dkt. 31). They assert that Plaintiff (1) fails to overcome the individual defendants' entitlement to qualified immunity; and (2) fails to state cognizable claims under Section 1983 and the Texas Whistleblower Act. (*Id.* at 2).

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view this evidence in the light most favorable to the non-movant, *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993), and should "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III. FIRST AMENDMENT: RETALIATION

Plaintiff first alleges that Defendants Jackson, Negri, Wilkie, Sanchez, Bradberry, Fleming, Gonzalez, Baker, and McCraw "retaliated against him for exercising his right to petition for redress of grievances as guaranteed by the First Amendment to the U.S. Constitution." (Original Pet., Dkt. 1-3, ¶ 28). Defendants maintain that, because Plaintiff has not demonstrated the occurrence of an adverse employment action, this claim must be dismissed.

4

## A. Legal Standards

To establish a Section 1983 claim for employment retaliation related to speech, "a plaintiff–employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 420–21 (5th Cir. 2017) ( citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

Because Defendants' argument that Plaintiff has not stated a claim for retaliation is limited to their argument that he has not demonstrated the occurrence of an adverse employment action, the Court will address only that prong of the standard identified above.

"The scope of harm actionable under the First Amendment [is] broader than actual or constructive discharge from employment." *Pierce v. Texas Dep't of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *Rutan v. Republican Party*, 497 U.S. 62, 74 (1990)). Rather, adverse employment actions are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." An investigation is not an adverse employment action, even if it "may have had the effect of chilling [a plaintiff–employee's] protected speech." *Pierce*, 37 F.3d at 1150.

## B. Discussion

Defendants contend that neither the February 4, 2015 counseling record ("February counseling record") nor the March 24, 2015 counseling record (the "March counseling record") constitutes an adverse employment action. Plaintiff disagrees.

With respect to the February counseling record, which was the result of a rescinded disciplinary action, (Original Pet., Dkt. 1-3, ¶ 20; Letter, Dkt. 31-2, at 4), Defendants argue that a rescinded formal reprimand does not constitute an adverse employment action. (Mot. Summ. J., Dkt. 31, at 12 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)). The case cited

5

by Defendants in support of that proposition, however, does not appear to have involved a formal reprimand that was rescinded and then replaced with an alternative disciplinary record. *Benningfield v. City of Houston*, 157 F.3d at 377. Here, Plaintiff asserts that the February counseling record—not the rescinded disciplinary action it followed—constitutes an adverse employment action.

Defendants next address the March 24 counseling record. Citing *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995), they maintain that Plaintiff cannot demonstrate that the record constitutes an adverse employment action because the record he received "does not amount to an ultimate employment decision." (Resp., Dkt. 12, at 31). Whether the record amounts to an ultimate employment decision, however, is not the standard. *Drake v. Nicholson*, 324 F. App'x 328, 332 (5th Cir. 2009) (recognizing that *Dollis* was overruled by the U.S. Supreme Court and emphasizing that "an adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); *see also* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ."). The general disposition of Defendants' Motion for Summary Judgment, with respect to Plaintiff's First Amendment claims, will therefore depend on whether Defendants are entitled to qualified immunity on those claims.[2]

Defendants also argue, however, that Plaintiff's First Amendment claims against Defendants Baker, Bradberry, Sanchez, and Fleming should be dismissed because Plaintiff fails to allege or demonstrate those defendants' personal involvement in the alleged retaliation. (Mot. Summ. J., Dkt. 31, at 12). Plaintiff does not respond to this argument, and Plaintiff's Original Petition fails to set forth any facts demonstrating that Defendants Baker, Bradberry, Sanchez, or Fleming were personally involved in the alleged retaliation. (*See* Original Pet., Dkt. 1-3, ¶¶ 22–24). In order to

---

[2] The Court addresses qualified immunity later in this order. *See infra* Section VII.

6

successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). With respect to his First Amendment claims against Defendants Baker, Bradberry, Sanchez, and Fleming, Plaintiff has not met that burden. His First Amendment claims against those defendants should therefore be dismissed. With respect to Plaintiff's First Amendment claims against Defendants Baker, Bradberry, Sanchez, and Fleming, Defendants' Motion for Summary Judgment is **GRANTED**.

### IV. FOURTEENTH AMENDMENT: EQUAL PROTECTION AND DUE PROCESS

Pursuant to Section 1983, Plaintiff brings claims against Defendants Jackson, Negri, Wilkie, Sanchez, Bradberry, Fleming, Gonzalez, Baker, and McCraw for denying him "the equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution." (Original Pet., Dkt. 1-3, ¶ 29). He brings claims against the same defendants for denying him due process of law. (*Id.* ¶ 30). Defendants seek summary judgment on both of these claims, (Mot. Summ. J., Dkt. 31, at 13–17), and Plaintiff offers no argument in response, (*see generally* Resp., Dkt. 33).

Once a party moving for summary judgment has met its initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Since Plaintiff has not responded to Defendants' arguments involving his Fourteenth Amendment claims, he has not met his burden. With respect to Plaintiff's Fourteenth Amendment claims, then, Defendant's Motion for Summary Judgment is **GRANTED**.

### V. FOURTH AMENDMENT: UNREASONABLE SEIZURE

Plaintiff, pursuant to Section 1983, also brings claims against Defendant Stokke—who detained Plaintiff during the May 2014 concert—"for violating his right to be free from

7

unreasonable seizure as guaranteed by the Fourth Amendment to the U.S. Constitution." (Original Pet., Dkt. 1-3, ¶ 31).

### A. Legal Standards

Unlawful detention and arrest claims "implicate the Fourth Amendment's proscription against unreasonable seizures." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009). Only unreasonable searches and seizures, however, violate the Fourth Amendment. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("[The] touchstone of the Fourth Amendment is reasonableness."). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Id.*

Police questioning itself is not a seizure, but continued detention without a reasonable suspicion that the individual has committed a crime or is about to violates the Fourth Amendment. *I.N.S. v. Delgado*, 455 U.S. 210, 216 (1984) (citing *Brown v. Texas*, 443 U.S. 47, 49 (1979)). Limited investigative stops or detentions, known as *Terry* stops, require a "reasonable, articulable suspicion that a person has committed or is about to commit a crime." *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). An officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that [limited] intrusion." *Terry*, 392 U.S. at 21. Courts examine "whether the officer's action was justified at its inception"—that is, whether reasonable suspicion was then present—and whether the stop "was reasonably related in scope to the circumstances which justified the inference in the first place." *Id.* at 20. Even if reasonable suspicion exists, the investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the detention, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

8

## B. Discussion

Defendant Stokke argues that any detention of Plaintiff was based on reasonable suspicion and lasted no longer than necessary to effectuate the purpose of the detention. (Mot. Summ. J., Dkt. 31, at 10). First, he argues, he approached Plaintiff to ensure he did not take alcoholic beverages from the VIP area into the main venue. (*Id.*). Defendant Stokke maintains that he "had reasonable suspicion to approach, detain, and question [Plaintiff] regarding the legally permissible areas to consume alcoholic beverages." (*Id.*). Plaintiff does not disagree, (Resp., Dkt. 33, at 5), and the Court accepts that argument.

The interactions that follow are more complex. Defendant Stokke alleges that Plaintiff told him he was a state law enforcement officer, but did not have his credentials. (Mot. Summ. J., Dkt. 31, at 10). According to Defendant Stokke, "[i]mpersonating as a law enforcement officer is a crime, and it was reasonable for Stokke to confer with other law enforcement officials to confirm Spears was a trooper." (*Id.*). Plaintiff disagrees, arguing that his "mere inability to furnish law enforcement credentials did not establish any reasonable basis for Stokke to further investigate or detain [Plaintiff]." The Court agrees with Plaintiff.

Under Texas law, impersonating a public servant is indeed a crime. *See* Tex. Pen. Code § 37.11(a). However, the offense requires that an offender act "with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." *Id.* § 37.11(a)(1). Here, the record demonstrates only that Plaintiff told Defendant Stokke he was a law enforcement officer. (Spears Decl., Dkt. 33-1, ¶ 3). No evidence suggests that Plaintiff acted with the intent to induce Defendant Stokke to submit to his official authority or to rely on his official acts. As a result, there is—at the very least—a genuine issue of material fact with respect to whether Defendant

Stokke's detention of Plaintiff violated the Fourth Amendment.³ With respect to Plaintiff's Fourth Amendment claim, the disposition of Defendants' Motion for Summary Judgment therefore depends on whether Defendant Stokke is entitled to qualified immunity on that claim.⁴

## VI. TEXAS WHISTLEBLOWER ACT

As noted above, Plaintiff brings claims for damages and injunctive relief against the State of Texas and Defendants Jackson, Negri, Wilkie, Sanchez, Bradberry, Fleming, Gonzalez, Baker, and McCraw pursuant to the Texas Whistleblower Act, Tex. Gov't Code § 554.001 *et seq.* (the "Whistleblower Act").

### A. Legal Standards

The Whistleblower Act provides that "a state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002(a). For purposes of the Act, "a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id.* § 554.002(b). The Act defines "personnel action" as any "action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." *Id.* § 554.001(3).

---

³ Defendant Stokke correctly notes that verifying someone's identity is widely accepted as a permissible activity during an investigatory stop. (Mot. Summ. J., Dkt. 31, at 10); Tex. Penal Code § 37.11; *Rakun v. Kendall Cty., Tex.*, 2007 WL 2815571, at *8 (W.D. Tex. Sept. 24, 2007) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."). However, Defendant Stokke asserts that he "confer[red] with other law enforcement officials" not to verify Plaintiff's identify, but "to confirm [Plaintiff] was a trooper." (Mot. Summ. J., Dkt. 31, at 10).

⁴ The Court addresses qualified immunity later in this order. *See infra* Section VII.

**B. Discussion**

Defendants assert that Plaintiff has not stated a viable claim under the Whistleblower Act because he has not identified an adverse employment action. Specifically, Defendants explain, (1) a rescinded formal reprimand does not constitute an adverse employment action as a matter of law; and (2) the March 24, 2015 counseling record Plaintiff received as a result of the photo with Broaddus does not constitute an adverse employment action because it is not an "action that affects [Plaintiff's] compensation, promotion, demotion, transfer, work assignment, or performance evaluation." (Mot. Summ. J., Dkt. 31, at 17–18). The Court has already disposed of Defendants' first argument. *See supra* Section III.B. Whether Plaintiff has identified an adverse employment action thus depends on whether the counseling records he received constitute adverse employment actions for purposes of the Whistleblower Act.

A personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act. *Montgomery Cty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007) (citation omitted). The standard is "expressed in 'general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Higbie v. Kerry*, 605 F. App'x 304, 308 (5th Cir. 2015) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 69 (2006)). Despite the strict language of the Act itself, Texas courts considering whether a personnel action is adverse consider the context in which the action took place in making that determination. *See, e.g.*, *Burleson v. Collin Cty. Community College Dist.*, No. 05-15-01361-CV, 2017 WL 511196, at *5–6 (Tex. App.—Dallas, Feb. 8, 2017, no pet.) (mem. op.) ("Although the reprimand was entitled 'coaching,' and purported to give constructive feedback, the overall tone suggests something more.").

Here, Plaintiff alleges that any reprimand—however informal—would be likely to dissuade a trooper from making a report because all counseling incidents are reported to local prosecutors,

"who in turn must disclose those incidents to inquiring criminal defense attorneys." (Resp., Dkt. 33, at 10). Every counseling incident thus "becomes fodder for the trooper's cross-examination at a criminal trial and thereby directly impacts his effectiveness on the job." (*Id.*). The Court concludes that a genuine dispute exists as to whether the counseling records Plaintiff received constitute adverse employment actions for purposes of the Whistleblower Act. With respect to this claim, Defendant's Motion for Summary Judgment is **DENIED**.

## VII. QUALIFIED IMMUNITY

Defendants argue that Plaintiff "fails to overcome the individual [d]efendants' entitlement to qualified immunity" and that any claims against those defendants must therefore be dismissed. The Court will thus consider whether the doctrine of qualified immunity precludes Plaintiff's First Amendment claims against Defendants Jackson, Negri, Wilkie, Gonzalez, and McCraw[5] or Fourth Amendment claim against Defendant Stokke.[6]

### A. Legal Standards

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity. *See Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). A court may, at its discretion, skip the first step and begin its analysis by asking whether the right in question

---

[5] As previously discussed, Plaintiff's First Amendment claims against Defendants Sanchez, Bradberry, Fleming, and Baker fail on other grounds. *See supra* Section III.B.

[6] Qualified immunity is not a defense to state-law claims, including those brought by Plaintiff under the Texas Whistleblower Act. *See, e.g.*, 59 Am. Jur. Proof of Facts 3d 291 (2000) ("Qualified immunity is a judicially created affirmative defense which protects state or local officials sued in their individual capacity under 42 U.S.C.A. § 1983, or federal officials sued in their individual capacity . . . .").

was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is entitled to qualified immunity if his conduct was objectively reasonable." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Id.* (internal citations omitted).

### B. Discussion

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citation omitted). In order to shift the burden to the plaintiff, "[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (citing *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982)). The defendants in this case have satisfied that requirement: they asserted their entitlement to qualified immunity in their Answers, pleading that they acted in good faith, and raised the issue again at summary judgment. (McCraw et al. Ans., Dkt. 2, ¶ 10; Negri et al. Ans., Dkt. 9, ¶ 10; Mot. Summ. J., Dkt. 31, at 7–8). Plaintiff thus has the burden to demonstrate the inapplicability of the defense.

Plaintiff has not met that burden with respect to either of his remaining federal claims. While the section of his Response addressing his Fourth Amendment claim references the qualified immunity standard and notes that "legal justification for a search and seizure 'must be objectively

13

grounded,'" (Resp., Dkt. 33, at 7 (citation omitted)), he makes no argument—and offers no facts—in support of the proposition that Defendant Stokke's conduct (1) violated a clearly established constitutional right and (2) was objectively unreasonable. Indeed, the only argument he does offer relates to whether Defendant Stokke had an objective justification for holding Plaintiff "on the basis of alleged public intoxication." *Id.* There is substantial dispute between the parties as to what Defendant Stokke's justification for detaining Plaintiff was, but Defendants' motion focuses on Defendant Stokke's alleged belief that Plaintiff was illegally impersonating a law enforcement official. Plaintiff adequately explains why he could not have been committing that offense, *see supra* Section V.B, but does not attempt to explain whether Defendant Stokke's conduct would have been objectively reasonable in that context.

Similarly, Plaintiff's only attempt to demonstrate the inapplicability of qualified immunity to his First Amendment claims is a notation that Defendants' Motion for Summary Judgment "does not address the defense as it specifically relates to [his] First Amendment retaliation claim." (Resp., Dkt. 33, at 9). The depth of Defendants' qualified-immunity analysis with respect to individual claims is immaterial. *See Saenz v. Flores*, 668 F. App'x 611, 613 (5th Cir. 2016) (mem. op.) (reversing a district court's denial of qualified immunity based on a failure to adequately invoke the doctrine and noting that the defendant "explicitly stated that he was entitled to qualified immunity with respect to [the plaintiff's] 42 U.S.C. § 1983 claims on multiple occasions"). Defendants adequately invoked the defense in their Answers, and the subject headers of their Motion for Summary Judgment make clear that they asserted qualified immunity with respect to all claims except those brought pursuant to the Texas Whistleblower Act.

The Court therefore concludes that Defendants are entitled to qualified immunity with respect to Plaintiffs' federal claims. As it pertains to those claims, their Motion for Summary Judgment is **GRANTED**.

14

## IIX. CONCLUSION

Defendants' Motion for Summary Judgment, (Dkt. 31), is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to Plaintiff's First Amendment, Fourteenth Amendment, and Fourth Amendment claims. The motion is **DENIED** with respect to claims brought pursuant to the Texas Whistleblower Act.

**SIGNED** on March 23, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE